445 A.2d 1190

**WORKMEN'S COMPENSATION APPEAL BOARD of the Commonwealth of Pennsylvania and Harold D. Katz, Appellants,**

**v.**

**The EVENING BULLETIN and the Employers Mutual Liability Insurance Company of Wisconsin.**

Supreme Court of Pennsylvania.

Argued April 13, 1982.

Decided May 25, 1982.

Thomas F. McDevitt, John C. McFadden, Philadelphia, for appellants.

James K. Martin, Philadelphia, for appellees.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

NIX, Justice.

The sole issue in this appeal is whether the referee properly found that the instant employer, *The Evening Bulletin*, a former Philadelphia newspaper, had knowledge of claimant's concurrent employment for purposes of computing claimant's average weekly wage pursuant to Section 309(e) of the Pennsylvania Workmen's Compensation Act[1] (Act) in effect at the time of the claimant's injury.

In a prior opinion[2] we remanded the instant case to the Commonwealth Court for review of the proper rate of compensation to appellant, Harold D. Katz, after holding that appellant had complied with the notice provisions of the Act, Section 312, 77 P.S. § 632. Upon remand, 48 Pa. Cmwlth. 425, 409 A.2d 970, the Commonwealth Court held that Section 309(e) requires that the employer know of the other employment if the employee's wages from all employers are to be considered as if earned from the employer liable for compensation and that claimant's employer, *The Evening Bulletin*, did not have "actual" knowledge of his concurrent employment. That court reversed the order of the Workmen's Compensation Appeal Board, affirming the referee's award of benefits to appellant and remanded the case for recomputation. For the reasons that follow, we reverse the order of the Commonwealth Court and reinstate the order of the Workmen's Compensation Appeal Board which affirmed the referee's award of benefits.

The underlying facts as stated in our prior opinion are as follows:

Appellant Katz worked part-time as a substitute "mailer" and "stuffer." In this capacity, he collected newspapers off the presses and, by machine or by hand, stuffed supplements into the papers and stacked them for distribution. Appellant's union, the Mailer's Union, acts as the *hiring agent* [emphasis added] for both the Philadelphia

---

1. Act of June 2, 1915, P.L. 736, as amended. 77 P.S. § 582(e).

2. *Katz v. Evening Bulletin*, 485 Pa. 536, 403 A.2d 518 (1979).

*Inquirer* and *The Evening Bulletin.* The newspapers inform the union of the number of substitute part-time mailers they will need on a particular night and the union assigns the jobs to its members.

On May 29, 1970, appellant was directed at the union hall to go that evening to the plant of the *Bulletin.* Until then, appellant had worked only at the *Inquirer.* Once at the plant appellant spoke only to the man who showed him to his work area. At the end of his work shift, approximately 2:30 a. m. on the morning of the 30th, appellant left the plant building. In an unlighted area of the employee parking lot, he fell over a broken manhole cover and injured himself. Appellant's workmen's compensation claim arose out of this accident.

485 Pa. at 538, 403 A.2d at 518 (1979).

The applicable provision of the Act in effect on the date of appellant's injury[3] was Section 309(e), 77 P.S. § 582(e) which provided in pertinent part:

§ 582. Wages; computation for purpose of determining compensation

*     *     *     *     *     *

Where the employee is working under concurrent contracts with two or more employers and the defendant employer has knowledge of such employment prior to the accident, his wages from all such employers shall be considered as if earned from the employer liable for compensation.

■ In the development of this area of the law, there was a perceived tension between the interests of the employer and employee in determining whether the wage base should be limited to the earnings of the employee in the employment in which the injury occurred or whether it should

**3.** In 1972, the legislature amended Section 309(e) to delete the knowledge requirement. The amended version states: "Where the employee is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation. 77 P.S. § 582(e) (Supp.1981–1982).

include the total earnings of the employee.[4] There was a concern that the employer might be required to provide compensation greater than the wages actually earned in that particular employment and the affected carrier would be called upon to make an outlay in excess of the premiums received. It was also contended that employment in a more hazardous occupation would be unfair to the employer providing a less hazardous employment. The illusory quality of the latter concern is readily apparent. Whether the concurrent employment is risky or safe in no way affects the impact of the concurrent employment wage rule on the employer in whose employment an injury has actually occurred.

Equally as transparent is the first objection. It is obviously repulsive to legislation, that is remedial in intent, to construe such legislation as relegating a claimant to a part-time wage basis, although his actual earnings are that of a full-time member of the labor force. Moreover, any isolated example of an injustice will be eradicated by an overall view of the situation. It is legitimate to consider the employer's sector as a composite, since that is the perspective used to determine premiums for workmen's compensation coverage. It is not fair to apply such a perspective to the individual workman whose entire life and that of his family may be dependent upon the award received in a given case. Most state legislatures have, as has Pennsylvania,[5] deleted limitations and permitted wages from all employers to be considered in determining the rate of compensation due.[6] Thus, today, the question before us would not have arisen and appellant clearly would be entitled to have his wages from the concurrent employment calculated in arriving at the appropriate compensation rate.

4. *See* 3A 2 Larson's *Workmen's Compensation*, § 60.30.

5. *See* footnote 3.

6. The original version of the Act which was adopted in 1915, Act of June 2, 1915, P.L. 736, art. III, § 309, did not contain the knowledge limitation upon wages of concurrent employments. In 1939 that requirement was first added. Act of June 21, 1939, P.L. 520, § 1.

The Commonwealth Court concluded that the former version of Section 309(e) required a demonstration of the "actual" knowledge of the employer of the concurrent employment prior to the injury. In so ruling, that court ignored the long and well established tradition in our law that certain relationships between parties requires the knowledge of one to be imputed to the other. A prominent example of this principle is the relationship between a principal and agent.

It is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, *Corn Exchange Nat. Bank & Trust Co. v. Burkhart*, 401 Pa. 535, 165 A.2d 612 (1960); *Evans v. Metropolitan Life Ins. Co.*, 294 Pa. 406, 144 A. 294 (1928); *Matthews v. Rush*, 262 Pa. 524, 105 A. 817 (1919) and therefore, knowledge of the agent is knowledge of the principal. *Fidelity Bank v. Pierson*, 437 Pa. 541, 264 A.2d 682 (1970); *Nat. Bank of Bedford v. Stever*, 169 Pa. 574, 32 A. 603 (1895).

It is a conceded fact in this record that the *Bulletin* elected to use the Mailer's Union as the hiring agent for obtaining employees to fulfill the task in question. It is also without doubt that the Union was aware that the persons selected to serve as substitute "mailers" and "stuffers" were drawn from a pool which performed the same services for other employers. As noted in the opinion of the Workmen's Compensation Appeal Board, ". . . it is a common practice in the newspaper industry to hire these substitutes on a regular basis for weekend purposes."

Giving full deference to the then existing legislative perception of fairness to the employer, we do not share the view of the Commonwealth Court that it requires an interpretation of Section 309(e) that would insulate the employer against knowledge concededly possessed by the employer's agent. The employer chose to delegate the hiring decision to its agent, the Union. The knowledge relevant to that decision possessed by the agent cannot be avoided by the principal. Accepting the Commonwealth Court's premise

that the legislature enacted the 1939 amendment to Section 309(e) to satisfy due process concerns, *see* 1A, Barbieri, *Pennsylvania Workmen's Compensation,* § 5.38(12) (1975), those concerns would not justify ignoring the relevant facts possessed by the employer's hiring agent. We therefore reject the Commonwealth Court's implicit conclusion that the then existing knowledge requirement must be interpreted as excluding the well settled principle that the principal is charged with the knowledge of its agent.

Accordingly, we hold that the referee correctly found that the *Bulletin* had prior knowledge of appellant's concurrent employment for purposes of Section 309(e). The Order of the Commonwealth Court is reversed and the award of the referee as affirmed by the Workmen's Compensation Appeal Board is reinstated.